If I may, Your Honors, I'd like to reserve five minutes for rebuttal. I'm wondering, Counsel, whether we're going to need 20 minutes aside in this case. It's really a very narrow attorneys' fees issue, so let's see how we go. Well, obviously, I'll permit you to reserve time. Thank you, Your Honor. My name is Daryl Manhart. I represent the appellate carriers. This case turns to the interpretation of 49 U.S.C. 14708, and if I can start, I'd like to say, if you consider first whether that statute did not exist, then you would have a situation where there is no basis for a property damage CARMAC claimant to seek or get awarded any attorneys' fees. No, that's the American rule. Yes, Your Honor. So you start out with a presumption that there are no attorneys' fees under the American rule, and then you go from there, you're going to get them, you've got to find statutory authority for them. The statute in this case looks plain on its face, and it's not tied to arbitration, although the clause is found within provisions where Congress is dealing with arbitration, and I can't figure out whether extending arbitration is a condition, whether participation in arbitration is a condition, or whether arbitration has nothing to do with the award of attorneys' fees. Tell me what you think. Well, Your Honor, the particular statute is not an attorneys' fee statute. 14708 is an arbitration statute. Counsel, I have trouble with that. Let me tell you what I'm thinking here so you can deal with it. I think it is an attorneys' fee statute because it says, subsection D, attorneys' fees to shippers. That reads to me like it's an attorneys' fee statute. And then what it says is, in a court action to resolve the dispute, the shipper shall be awarded reasonable attorneys' fees if. So to me, it's an attorneys' fee statute. Then I see what the if is, and I look at subsection 2, and it looks as though one condition is the shipper has to win in court, and that condition's satisfied. The second condition is in the alternative. One alternative is it's a court proceeding to enforce an arbitration award. That condition's not met here. The alternative, and it's alternative because they're connected with or, is a decision resolving the dispute was not rendered through arbitration within the period. That's the kicker, because literally, that's satisfied here. The shipper did not obtain a decision resolving the dispute within the period because the shipper did not arbitrate at all. Now, one reading of this would be yours, that you have to go to arbitration first. But it doesn't literally say that. An alternative reading would be the moving company has to make arbitration available. If people take advantage of it, great. They don't need a lawyer. It's fast, cheap, easy. If they choose to hire a lawyer and go whole hog and go to court and skip the arbitration altogether, it's on their own nickel unless they win. But if they win, you pay. What's the matter with that reading? Your Honor, I did lose you right at the end, but D3A is the part you're referring to. D3A of 14708 refers back to subsection B in that language. I'm sorry, B8. That's for the period. That's right. Only for the time period. Yes, Your Honor. So if your arbitration is delayed, if they try to arbitrate but it's delayed, they get attorney's fees if they win in court. For D3A to apply, the time period has to have expired without a decision having been rendered. The time period referred to is the cross-reference back to subsection B8. But it doesn't say literally that they have to arbitrate at all. All it says literally is that there was no arbitration decision within that period. Your Honor, that time period never expires if there's no arbitration, and that condition of D3A is not satisfied. D3A doesn't stop at the words that no arbitration decision was rendered. It says no arbitration decision was rendered under this section within the period provided under subsection B8. For that period to have expired under subsection B8, the shipper would have to have submitted the dispute to an arbitrator. I don't see that. It seems to me there are two ways that that can be satisfied, that a decision resolved the period provided for under B8 is 60 days. So you can just substitute 60 days. And then you can read 3B, or 3A, rather, to say a decision resolving the dispute was not rendered through arbitration under this section within 60 days. That's literally true. Now, you can read it to imply that you have to go to arbitration first as a precondition to going to court. But frankly, I'm thinking that the moving companies have plenty of lobbyists. And the householders who put goods on moving trucks don't. And if the moving companies wanted to get a statute that said not only do the moving companies have to provide arbitration as a possibility, but the shipper can't get to court unless they go to arbitration first, they would have gotten that section. Congress would have written it in. Your Honor, with all due respect, you're incorrect on your statement that the 60 days has expired. The 60 days under B8 never ran. The 60 days under B8 is measured from when the dispute is submitted to the arbitrator. If the shipper claimant fails to request arbitration, that situation does not arise because of the shipper's own election not to request arbitration. What do we have in this case? Did the shipper affirmatively elect not to arbitrate or just the subject never came up? In all situations that — well, I shouldn't generalize when I'm — Your Honor, carriers provide notice, and I believe it's usually through a Federal Highway Administration booklet that describes parroting the language of the statute, the arbitration procedure that's available. That was provided to the Campbells here. It's admitted in the pretrial statement. Is there a written document saying, I hereby waive my rights under arbitration? No, Your Honor. The statute — They were never invoked, in other words. That is correct. And the statute is written. It's not an arbitration statute that requires both parties to submit a claim for arbitration. It requires the carriers to have an arbitration program available, and it leaves the election to a shipper whether to select it or not. But only if the shipper selects it do you have B-8 invoked, and only if B-8 is invoked does D-3A come into play. I don't see how you get there, literally. Subsection 8, the deadline for decision section, only commands the arbitrator. It says what the arbitrator must do. And Congress was very careful in subsection 6 not to require the shipper to use arbitration. They only required the carrier to make arbitration available. Congress said the carrier must not require the shipper to utilize arbitration prior to the time that a dispute arises. That means they can't put it in the bill of lading that you have to arbitrate. That's right. So it looks like Congress was kind of one-sided here. They imposed a burden on the carriers without imposing a burden on the shippers. They imposed the burden on the carrier to pre-agree to offer arbitration. They do not impose a burden on the shipper to select it. If the shipper does select it, then all those requirements are invoked under subsection B, and then you get to D3A, and it would be satisfied if the arbitrator failed to make a timely decision. I think if the first step in this whole process is filing of the claim with the moving company by the shipper, and then the moving company disallowing it or rejecting it in whole or in part, then the arbitration process would begin, or at least become available. Yes. I'd place in between your starting and ending there that after the claim has been made, assuming it's not been resolved satisfactorily, the statute provides that the shipper may request the forms and requires the carrier to provide the forms to initiate the arbitration upon that request. So when the shipper fails to make that request, the carrier does not provide the form and no arbitration occurs. The provision that Your Honor was mentioning regarding what Congress had done leaves that option with the shipper whether to select it, but if the shipper fails to select arbitration, you're back to, it's as if this statute did not exist. You have the American rule applying, and there's no right to fees. Counsel, why don't we hear from the shipper now and see what the points of issue are. Certainly, Your Honor. Good morning. Good morning. May it please the Court, my name is Greg Goode, and I'm the attorney for Ed and Susan Campbell. They lived in Tucson and moved to Florida for retirement and suffered damages to their goods. The problem, I think, with the construction by the moving companies is that the in this case is that it seeks to delve too deeply into the mind of Congress. And this is something that perhaps the lobbyists of the moving company are adept at accomplishing, but in preparing our case and in preparing our briefs, a lot of the cases we cited came back around to just reading the language of the statute itself. And I think to enforce the interpretation offered by the moving companies is really a trap for the consumers, because especially in the $5,000 and more cases, which I'll get to in a second. Well, the only issue on appeal is the $15,000 in attorney's fees, correct? That's correct. That's correct. The consequential damages which were awarded at trial are not subject to appeal in the case. Well, I take it, looking at this from the perspective of its being an arbitration statute, 08, you did not, before bringing suit, pursue any arbitration recommendation or opportunity, is that correct? It is. And in this case, the property damage is alleged for in excess of $5,000. And what the statute provides is that if there is a case where property damage exceeds $5,000, the arbitration referred to on behalf of the moving companies is not binding on them. And that's the trap, because a consumer could initiate an arbitration in a case where there's more than $5,000 of property damage alleged, have to go through a nonbinding arbitration, and then have to go through court and be deprived of their opportunity to recover attorney's fees. Well, for you to prevail in this appeal, you have to establish that the court properly found that you qualified under either D3A or D3B. Yes. Which did you qualify under? D3A. And take us through that passage and show exactly how you did qualify. In other words, was there a decision resolving the dispute rendered through arbitration? Obviously, the answer is no. Or during that? And that simply is our position, is that absent a decision in arbitration, this statute is not binding. requires that in any court action, reasonable attorney's fees shall be awarded, if there has not been a decision in arbitration. It does not say that the shipper must initiate one. And we looked at this from the perspective of what really are the substantive rights that are left. And I appreciate this Court undertaking a review of CARMAC. I'll be gesturing three cases today, and that's the substantive rights in CARMAC for the Federal right to have attorney's fees is a remedial right for a shipper and I think should be protected by this Court. And that right to attorney's fees should be liberally construed. Not in face of the American rule. And if the American rule applied and we didn't have the statute, I wouldn't be here today taking up your time. Certainly, we agree that under the American rule, there is no right to attorney's fees. We are absolutely proceeding under 49 U.S.C. 14708d. Counsel, we're not done parsing the statute, at least to my satisfaction. Yes. I'm looking at 3A. It was not rendered through arbitration. But what about the rest of the sentence? Within the period provided under Section B.A. So you have to go back to B.A. Yes. And we have never ignored the rest of that sentence there. The reference to B.A. provides a timeframe upon which a decision in arbitration needs to be rendered. Assuming one was requested. Assuming an arbitration was requested. A shipper? And I think you just told us that you never requested arbitration. So the arbitration deadline, B.A. clause, never came into being here. It never materialized. Well, the answer to that is, in my review of it, is that the arbitration deadline the carrier could have as well initiated the 60 days. There is no specific requirement that a shipper initiate. But it didn't. And you didn't. Neither side initiated the arbitration. Yes. There was no arbitration. And that trigger, and I think critically, that trigger is not incorporated into D.3. D.3, although it specifically refers to a portion of subsection B, it refers to the time period in. And if you look at D.3. D.3.A. says within the period provided under subsection B.A. Right. It says within the period. It does not address any triggering of the period. It does not address who, if anybody, must trigger the period. All it refers to is the time period contained with it. In other words, it doesn't incorporate the entirety of B.A. It only incorporates the time period, which is 60 days. Is it? Oh, sorry. Go ahead. Well, I was just going to say that it's still 60 days beyond the time in which the arbitration is to commence. Isn't that right, when you look at B.A.? And if it's not going to be invoked, it simply is inoperative. If the trigger of the filing of an arbitration were incorporated into D.3., I think that would make more sense. But D.3. simply refers to the time period itself, which could have been initiated by either the carrier or the shipper. In a case where neither party, which is this case, neither party requested an arbitration, you still have D.3., which on its face says that attorney's fees are awarded if no decision is rendered in arbitration in this time frame. And so without bringing that trigger into D.3., then the shipper should be outside of the rule, the federal remedy, the remedial statute to protect the consumer should be construed in favor of the consumer instead of in favor of the company that went back and helped to draft the law. Let me take you through something to make sure I'm understanding the statute right. I'm looking at subsection B.6. So was Judge Edgington. The way it looks to me under B.6, first of all, the shipper can't be required to accept a bill of lading that binds him to arbitration. Second, the second sentence, if it's a small dispute, an under $5,000 dispute, and the shipper requests arbitration, it says such arbitration shall be binding on the parties. So I guess then you would just go to court to enforce the award if you didn't get your check. Right. Now, the third sentence confuses me a little. What it says is if it's a big dispute, an over $5,000 dispute, and the shipper requests arbitration, such arbitration shall be binding only if the carrier agrees to arbitration. That last phrase, only if the carrier agrees to arbitration, suggests to me that the shipper may ask for arbitration, the carrier may say, no, we don't care to arbitrate. Is that true? I'm following you so far. Is that correct so far? Yes. So if you have that situation, the shipper asks for arbitration, and the carrier does not agree to arbitration, then the case would not be arbitrated. Is that correct? That's correct. So if that happened, there would never be notification of the dispute to an arbitrator. Is that right? That's correct. Thereby, would never. So the 60 days would never run? Would never run. So in $5,000 cases, the carrier would have the right to defeat any right to attorney's fees by simply not agreeing to arbitration. Anything further, Mr. Good? Do you feel the statute, if you prevail here, entitles you to fees for the appeal? Yes, Judge. I don't see a distinction between the trial in appellate court and the statute, as long as the fees are reasonable. So we'll talk about that later. All right. Thank you, Mr. Good. Thank you. Mr. Manhart, you have plenty of reserved time. Thank you, Your Honors. Your Honors, there's no reason to have the various requirements that are set forth in D.3 of the statute if the interpretation is going to be that every CARMAC claimant can request fees and be awarded fees if they haven't requested arbitration first. There's no need to provide anything with respect to the rest of subsections, I suppose, except that they prevail under D.1. That would be the only requirement. That's not what the statute says, however. To give the interpretation that Mr. Good's clients want here is to read out all the rest of those requirements and to render meaningless the necessity of the carrier providing an arbitration. And, Judge Kleinfeld, when you were asking or directing attention to subsection B.6, I respectfully, again, disagree with you on that. I don't believe, although I see the language you're pointing to and why you asked the question, I do not agree that a carrier can decline arbitration when the amount is over $5,000. And I believe it's before Congress to increase that to $10,000 now, which doesn't change your question. That's why I asked, that $5,000 or $10,000 doesn't matter to the principle. Correct. That's why I asked. I'm trying to understand this. And it seems like the words in that last phrase should be only if the carrier agrees that arbitration shall be binding. Yes. And then you'd have non-binding arbitration, a big waste of time. But it doesn't say that. It says if the carrier agrees to arbitration. And I'm thinking why would you say agrees to arbitration if they don't have to agree to arbitration? But the effect that the additional words you just suggested is how I believe that sentence is correctly interpreted, even though the word binding isn't added on to the end. But it doesn't say that. Your Honor, subsection A requires the carrier to offer the arbitration. If the carrier can decline arbitration for claims over $5,000, then the carrier is not offering arbitration. The statute requires that. It makes it mandatory now. They only have to offer arbitration in accordance with this section. Yes, Your Honor. So it could be non-binding arbitration for claims over $5,000. And that is correct, Your Honor. The Congress has exercised its prerogative to make claims over some amount non-binding if the carrier selects. Now, there's a law journal article I cited in the brief. Now I've forgotten the journal. I think it's the only one I cited. I happen to notice there's some statistics in there. It still has some point to it. They could say, well, what we're doing here is providing a cheap, fast, easy way to resolve small disputes. The lady opens one of the barrels and all her glasses are broken. Well, you can't hire a lawyer to sue for $800. So the moving company may just stiffer unless she has a cheap, fast, convenient way to get her $800. And, Your Honor, that's the reason I only reference to the law journal article because I notice there's statistics in there where apparently there's been some studies, I think it was in 1996, and the vast majority of claims were well underneath these amounts. However, that doesn't mean they all are. And you do have a situation where, in theory, the claim could be over $5,000, and a carrier may or may not agree to binding arbitration. And we can, I suppose, discuss what happens if a carrier says that it's not binding. Then the shipper would still then have to sue. So you just want me to read the words agrees to arbitration as though they said agrees that the arbitration shall be binding? Your Honor, it's not that I just want you to do that. I say that subsection A requires that reading of subsection D or, I'm sorry, B6. What words in A require that? I don't see it. It just says must agree to offer in accordance with this section arbitration. It doesn't say must agree that it will arbitrate claims regardless of their size. Well, Your Honor, it's an empty offer if the carrier can offer it but then choose to not agree to it at all. Oh, no. You just said that that law review article says, and I'm sure you're right, that most claims are under $5,000. So it's not an empty offer. It means that the shippers in the vast majority of cases can get their cases rapidly and efficiently arbitrated. I agree with that, Your Honor. I'm sorry. In small claims court. Well, or before an arbitrator. Yeah. And that is one of the tradeoffs made here in the Carmack claim as well. A shipper has the ability to request arbitration and then doesn't have to prove causation under Carmack, just proves damages were delayed, lost, or damaged, doesn't have to allocate fault between different shippers, and gets a claim decided within a short period of time, 60 days. Am I out in left field here in thinking that the words agrees to arbitration mean what they say? If there's some big body of authority out there that says they really mean agree that the arbitration shall be binding, I'd like to know about it because I don't want to stumble here. Well, Your Honor, I'm not going to agree you're out in left field. I do disagree with you, and I believe if you read the Ward case, which now I've forgotten if that's the It's decided under the previous version of the statute, but at a time when this version existed, and there's a sentence I quoted, I believe, in the reply brief where at least it appears to me that that court agrees to the interpretation I just argued because it refers to claims going to a non-binding arbitration. And I read that as consistent with what I just said, that if the carrier for those claims over the $5,000 amount does not agree, the arbitration proceeds is simply not binding. The question one could ask then is what happens if the arbitration results? Well, I presume that since I don't know whether under the program those decisions to accept it as binding are made at the beginning or at the outset, if it's not made until the conclusion, then I presume the carriers only agree it's not binding when they have got an unfavorable decision. But the statute, as I read it, does not prevent the shipper when it then brings a court claim from referring to that arbitration and from requesting fees if it is, again, successful in the court action because then it would be seeking to have the carrier comply with the arbitration decision, and that does invoke D3P. So my argument here is that the only reason this statute exists, 14708, is to provide this arbitration program, and if it's not being invoked, then you don't get to the fee question at all. If it isn't ---- I think we understand the issues quite clearly now, and you've given us a good challenge of statutory construction and statutory interpretation. Thank you, Your Honor. Thank you very much. Thank you. The case just argued will be submitted for decision, and we will hear argument now in Kverner, E&C v. Yellow Freight.
judges: Beezer, O'scannlain, Kleinfeld